UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MILTON DELACRUZ,

      Petitioner,

v.                                                                                    Case No. 8:20-cv-617-WFJ-AEP

SECRETARY, DEPARTMENT
OF CORRECTIONS,

      Respondent.
_____/

## ORDER

      Mr. Delacruz, a Florida prisoner, initiated this action by filing a petition for the writ of habeas corpus under 28 U.S.C. § 2254 (Doc. 1). Respondent filed a response (Doc. 10), to which Mr. Delacruz replied (Doc. 14). Upon consideration, the petition is denied.

## I. BACKGROUND AND PROCEDURAL HISTORY

      Mr. Delacruz and a co-defendant were charged with trafficking in cocaine (Doc. 11-2, Ex. 1 at docket p. 63). Mr. Delacruz moved to suppress the evidence found in his vehicle following an investigatory stop (*Id*. at docket pp. 51-61). Following an evidentiary hearing (*id*. at docket pp. 154-204), the motion was denied (*Id*. at docket p. 62). Mr. Delacruz failed to appear for a hearing on November 1, 2005 and remained a fugitive until he was arrested on July 30, 2009 (*Id*. at docket pp. 65-71). A jury found Mr. Delacruz guilty as charged (*Id*. at docket p. 131). He was sentenced to 25 years in

prison (*Id*. at docket p. 139). The conviction and sentence were then affirmed on appeal (Doc. 11-4, Ex. 5).

Mr. Delacruz filed a motion for post-conviction relief under Rule 3.850, Fla.R.Crim.P., and two amended motions, in which he alleged claims of ineffective assistance of trial counsel (Doc. 11-5, Ex. 7, Part 1 at docket pp. 84-378; Doc. 11-6, Ex. 7, Part 2 at docket pp. 6-11). Several grounds for post-conviction relief were summarily denied, and an evidentiary hearing was ordered on the remaining two grounds (Doc. 11-6, Ex. 7, Part 2 at docket pp. 127-40). After the evidentiary hearing (*id*. at docket pp. 275-324), the remaining two grounds were denied (along with a claim of cumulative effect of trial counsel's ineffectiveness) (*Id*. at docket pp. 245-52). The denial of the Rule 3.850 motions was affirmed on appeal (Doc. 11-7, Ex. 11).

Mr. Delacruz has now filed his federal habeas petition (Doc. 1) which assert five grounds for relief.

## II. GOVERNING LEGAL PRINCIPLES

Because Mr. Delacruz filed his petition after April 24, 1996, this case is governed by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *Penry v. Johnson*, 532 U.S. 782, 792 (2001); *Henderson v. Campbell*, 353 F.3d 880, 889-90 (11th Cir. 2003). The AEDPA "establishes a more deferential standard of review of state habeas judgments," *Fugate v. Head*, 261 F.3d 1206, 1215 (11th Cir. 2001), in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002); *see also Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (recognizing

that the federal habeas court's evaluation of state-court rulings is highly deferential and that state-court decisions must be given the benefit of the doubt).

**A. Standard of Review Under the AEDPA**

Under the AEDPA, habeas relief may not be granted regarding a claim adjudicated on the merits in state court unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The phrase "clearly established Federal law," encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

"[S]ection 2254(d)(1) provides two separate bases for reviewing state court decisions; the 'contrary to' and 'unreasonable application' clauses articulate independent considerations a federal court must consider." *Maharaj v. Secretary for Dep't. of Corr.*, 432 F.3d 1292, 1308 (11th Cir. 2005). The meaning of the clauses was discussed by the Eleventh Circuit Court of Appeals in *Parker v. Head*, 244 F.3d 831, 835 (11th Cir. 2001):

> Under the "contrary to" clause, a federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the United States Supreme Court] on a question of law or if the state court decides a case differently than [the United States Supreme Court] has on a set of materially indistinguishable facts. Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the United States Supreme Court's]

decisions but unreasonably applies that principle to the facts of the prisoner's case.

If the federal court concludes that the state court applied federal law incorrectly, habeas relief is appropriate only if that application was "objectively unreasonable." *Id*.

Finally, under § 2254(d)(2), a federal court may grant a writ of habeas corpus if the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." A determination of a factual issue made by a state court, however, shall be presumed correct, and the habeas petitioner shall have the burden of rebutting the presumption of correctness by clear and convincing evidence. *See Parker*, 244 F.3d at 835-36; 28 U.S.C. § 2254(e)(1).

**B. Standard for Ineffective Assistance of Counsel**

The United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984), established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance: (1) whether counsel's performance was deficient and "fell below an objective standard of reasonableness[;]" and (2) whether the deficient performance prejudiced the defense. *Id*. at 687-88. A court must adhere to a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id*. at 689-90.  "Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id*. at 690; *Gates v. Zant*, 863 F.2d 1492, 1497 (11th Cir. 1989).

As observed by the Eleventh Circuit Court of Appeals, the test for ineffective assistance of counsel:

> has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial. Courts also should at the start presume effectiveness and should always avoid second guessing with the benefit of hindsight. *Strickland* encourages reviewing courts to allow lawyers broad discretion to represent their clients by pursuing their own strategy. We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992) (citation omitted). Under those rules and presumptions, "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994).

## III. ANALYSIS

**GROUND ONE:   THE TRIAL COURT REVERSIBLY ERRED BY DENYING THE DEFENDANT'S MOTION TO SUPPRESS THE EVIDENCE BASED ON AN ILLEGAL STOP OF THE DEFENDANT'S VEHICLE IN VIOLATION OF THE SIXTH AND FOURTEENTH AMENDMENT [sic] TO THE UNITED STATES CONSTITUTION**

Mr. Delacruz argues officers illegally stopped his vehicle in violation of the Fourth Amendment and therefore the trial court erred in denying his motion to suppress.

Ground One is barred from federal habeas review. "[W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that

evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Stone v. Powell*, 428 U.S. 465, 494 (1976) (footnotes omitted). Therefore, to obtain federal habeas review on a Fourth Amendment claim, a petitioner must demonstrate that he "was denied an opportunity for a full and fair litigation of that claim at trial and on direct review." *Id*. at 494, n.37. The phrase "'opportunity for full and fair litigation' means just that: an opportunity." *Lawhorn v. Allen*, 519 F.3d 1272, 1287 (11th Cir. 2008) (quoting *Caver v. Alabama*, 577 F.2d 1188, 1192 (5th Cir. 1978)).

Mr. Delacruz received an opportunity for full and fair litigation of his Fourth Amendment claim. The trial court held an evidentiary hearing where state witness Detective Skoumal testified and was cross-examined by defense counsel, and the parties could make closing arguments (Doc. 11-2, Ex. 1 at docket pp. 156-99). In denying the motion to suppress, the court made oral factual findings and applied those findings to the law (*Id*. at docket pp. 200-02). Mr. Delacruz fails to show that the state appellate court did not afford "full consideration" to his claim. *See Mason v. Allen*, 605 F.3d 1114, 1120 (11th Cir. 2010) ("full and fair consideration...includes at least one evidentiary hearing in a trial court and the availability of meaningful appellate review when there are facts in dispute, and full consideration by an appellate court when the facts are not in dispute." (quoting *Bradley v. Nagle*, 212 F.3d 559, 565 (11th Cir. 2000))). There is no indication that Mr. Delacruz was limited in his presentation of his claim, and the State asserted no procedural bars to Mr. Delacruz's claim, instead addressing it on the merits (Doc. 11-4, Ex. 3 at pp. 5-11). Furthermore, under these circumstances, the state court's silent affirmance is presumed to be a determination on the merits. *Harrington v. Richter*,

562 U.S. 86, 99 (2011). Accordingly, Mr. Delacruz cannot show he was denied the opportunity for full and fair litigation of his Fourth Amendment claim. *Stone* therefore bars review of this claim. Ground One warrants no relief.

**GROUND TWO: PETITIONER WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL WHEN COUNSEL FAILED TO OBTAIN A COPY OF THE VIDEO RECORDING INTERVIEW OF THE CI WITH LAW ENFORCEMENT OFFICERS IN VIOLATION OF THE SIXTH AND FOURTEENTH AMENDMENT [sic] TO THE UNITED STATES CONSTITUTION**

Mr. Delacruz contends counsel was ineffective in failing to obtain a copy of the video recording of law enforcement's interview with the confidential informant.[1] He states counsel should have used the video during the hearing on his motion to suppress to impeach Detective Skoumal's testimony concerning: 1) that law enforcement knew Mr. Delacruz before the interview with the informant; and 2) that the informant identified Mr. Delacruz from a photograph shown to him during the interview. Mr. Delacruz alleges the video shows the officers did not know him, and the photograph shown to the informant was of another person. Mr. Delacruz argues had counsel used the video to impeach Detective Skoumal on these issues, it would have established there was no probable cause to stop his vehicle, and the motion to suppress would have been granted.

---

[1] Information provided by a confidential informant during an interview with law enforcement supplied the probable cause for stopping Mr. Delacruz's vehicle (Doc. 11-4, Ex. 3 at docket pp. 45-46).

This claim was raised in state court in Ground One of Mr. Delacruz's amended Rule 3.850 motion (Doc. 11-5, Ex. 7, Part 1 at docket pp. 347-54).[2] In denying the claim, the state post-conviction court stated in pertinent part:

> Defendant first alleges that counsel was ineffective for failing to obtain a copy of the C.I.'s videotaped interview and failing to introduce that video during the September 21, 2005, suppression hearing. The focus of the suppression hearing was whether, based on the totality of the circumstances, there was a reasonable basis for the stop of the vehicle. Each of Defendant's claims in this Ground allege that the video and/or Detective Skoumal's deposition testimony would have served to impeach Detective Skoumal's hearing testimony. He alleges the video would not show an incoming call to the C.I. from Defendant, which was the basis for the investigation into Defendant, and would impeach other inconsistent details of Detective Skoumal's hearing testimony.

> The State and Defendant agree in their respective motions that the video at issue is only one hour and 16 minutes long. The C.I. was in custody from approximately 7:00 a.m. through 10:00 p.m. As an initial matter, Detective Skoumal testified at the suppression hearing that he was not present with the C.I. on February 23, 2005, for the entire videotaped interview. However, Agents Scanlon and Hundt were in the room and advised Detective Skoumal that the C.I. received a phone call from Defendant during their interview. Apparently, the C.I. previously scheduled a transaction with Defendant to occur later that day. Defendant's Amended Motion states that the C.I. advised the agents on the video at 39:48 that "he has a guy waiting" for him, and at 40:33 begins giving identifying details about "Milton." Detective Skoumal, who was not present at the time of the first call, testified during the hearing and his deposition that the initial call was captured on the video. However, the State and Defendant agree that the video does not show an incoming call from Defendant to the C.I. Defendant alleges the video should have therefore been used to impeach Detective Skoumal's incorrect testimony.

---

[2] Although in his amended Rule 3.850 motion Mr. Delacruz alleged the video would have impeached additional parts of Detective Skoumal's testimony, he does not raise those matters in Ground Two of his federal habeas petition. Ground Two solely challenges Detective Skoumal's testimony that law enforcement knew Mr. Delacruz before they interviewed the informant, and the informant identified Mr. Delacruz from a photograph (Doc. 1 at docket p. 5).

Even if counsel could be deemed ineffective for failing to impeach Detective Skoumal's testimony about the initial phone call, Defendant cannot demonstrate prejudice. Although the video does not show an incoming phone call, there were multiple subsequent recorded calls between the C.I. and Defendant as to his location that were ultimately not admitted at trial because Defendant did not testify. The subsequent calls lend credibility to Detective Skoumal's testimony that there was, in fact, an incoming phone call and a previously arranged transaction that started the investigation into Defendant, even if he was incorrect that the call was recorded on video. He was clear that he only knew of the phone call through the other agents. The C.I. was in custody for an extended period of time and could have received a call while the video was not recording. There is no reasonable likelihood that an attempt to impeach on this point with the video would have changed the outcome of the suppression hearing, considering Detective Skoumal was not present for the first call, the amount of time the C.I. was in custody, the subsequent recorded calls, the C.I.'s statement that he had a deal set with Defendant, and his identification.

Defendant alleges the video would have impeached Detective Skoumal's testimony that law enforcement knew Defendant prior to the C.I. receiving a phone call. Detective Skoumal testified that upon learning Defendant's first name and description from the C.I., he researched his identity and during the search another unnamed officer knew of a person matching the description and name, and located a photo of Defendant. The testimony is not clear whether that was an officer inside the interview room on video, or another officer. Therefore, the video would not have impeached Detective Skoumal because he never testified the officers on video knew Defendant.

Defendant also alleges that the video would have impeached Detective Skoumal's statement that the C.I. identified Defendant through a photo because the C.I. only saw one photo during the video and identified someone other than Defendant. Again, the C.I. was in custody for more than the hour and 16 minutes he was on camera. The video would have only shown that Detective Skoumal did not show him the photo during that one hour and 16-minute period, and Detective Skoumal never testified it happened during that period. While he testified the C.I. identified Defendant's photo, he did not state it was done on video; in fact, he did not detail when or where exactly that occurred. In his deposition, he claimed he showed Defendant's photo to the C.I. while he was with Detective Price, but did not specify he did this on video. Therefore, Detective Skoumal did not testify inconsistently and video would not have impeached him.

\*\*\*

- 9 -

None of Defendant's allegations demonstrate a missed opportunity for impeachment because the statements were not inconsistent and, if they could be deemed inconsistent, they were not material and substantial, and therefore, Defendant cannot demonstrate prejudice. Counsel cannot be deemed ineffective for failing to pursue a meritless issue. *Teffeteller v. Dugger*, 734 So. 2d 1009, l020 (Fla. 1999). In order to show prejudice, Defendant must demonstrate a reasonable likelihood that the outcome of the case would have been different had counsel performed competently. *Strickland*, 466 U.S. at 694. Any inconsistencies were minor and were not, cumulatively or independently, reasonably likely to result in a different outcome at the suppression hearing had counsel raised the claims. This ground will be denied.

(Doc. 11-6, Ex. 7, Part 2 at docket pp. 131-33, 135-36) (footnotes omitted). The state appellate court affirmed without a written opinion (Doc. 11-7, Ex. 11).[3]

Mr. Delacruz fails to establish that he was prejudiced by counsel not using the video. He has not demonstrated a reasonable probability that had counsel used the video, his motion to suppress would have been granted. This is because, as the state post-conviction court correctly stated, the video would not have impeached Detective Skoumal's testimony that law enforcement knew Mr. Delacruz before the informant received a phone call, and the informant identified Mr. Delacruz from a photograph shown to him.

The informant was with and interviewed by officers from 7 a.m. to approximately 10 p.m. (Doc. 11-6, Ex. 7, Part 2 at docket p. 175). The informant was videotaped for only one hour and sixteen minutes (Doc. 11-5, Ex. 7, Part 1 at docket p. 350). Mr. Delacruz alleges "[t]he subject video clearly shows that the Petitioner was

---

[3] If, as here, the last state court denied the federal claim in an unexplained decision, the federal court looks through the unexplained decision to the last reasoned order to rule on the claim. *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991).

not known at all by law enforcement during the interview with the CI." (Doc. 1 at docket p. 5). But he does not explain how the video shows the officers did not know him. Detective Skoumal testified Mr. Delacruz "was already known by another agent we were working with" (Doc. 11-6, Ex. 7, Part 2 at docket p. 148). Detective Skoumal never testified who that officer was or if the officer was on the video (*Id*. at docket pp. 144-70). Thus, Detective Skoumal could have been informed by the other officer that he knew Mr. Delacruz when the informant was not being videotaped. Therefore, Mr. Delacruz fails to demonstrate had counsel used the video, it would have impeached Detective Skoumal's testimony that an officer already knew him.

Mr. Delacruz also fails to demonstrate the video would have impeached Detective Skoumal's testimony that the informant identified Mr. Delacruz from a photograph shown to him by officers. In support of his contention, Mr. Delacruz appears to rely on a summary of the video that states in part "Law enforcement shows C.I. a picture of a man named 'Calvin' and C.I. confirms the picture is of Calvin." (Doc. 11-5, Ex. 7, Part 1 at docket p. 350). However, the officers showing a picture of "Calvin" to the informant during the videotaped portion of the interview does not establish the officers never showed the informant a picture of Mr. Delacruz during the other 13 to 14 hours the informant was with the officers. The video summary shows the officers asked the informant about individuals with whom he had prior criminal dealings, since he named "Milton" (Mr. Delacruz) and three other individuals – "Calvin," "Junior," and "Papi." (*Id*.). Detective Skoumal never testified the informant

- 11 -

was shown the picture of Mr. Delacruz during the videotaped portion of the interview (Doc. 11-6, Ex. 7, Part 2 at docket pp. 144-70).

What is apparent from the summary of the video is the informant identified "Milton" as a Hispanic individual from Sarasota from whom he purchases cocaine, stated that "Milton" was "waiting for him right now," and described "Milton's" vehicle, which ultimately matched the vehicle Mr. Delacruz was driving and in which the drugs were found (Doc. 11-5, Ex. 7, Part 1 at docket p. 350). Thus, the video supported Detective Skoumal's testimony on significant issues. Counsel therefore was not deficient in failing to use the video to impeach Detective Skoumal's testimony, and Mr. Delacruz cannot show he was prejudiced.

Mr. Delacruz has failed to demonstrate the state courts' denial of this claim was an unreasonable application of *Strickland* or based on an unreasonable determination of the facts. Accordingly, Ground Two warrants no relief.

**GROUND THREE:**     **PETITIONER WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL WHEN COUNSEL FAILED TO INTRODUCE THE RECORDED PHONE CALLS ALLEGEDLY MADE BETWEEN THE CI AND THE PETITIONER AT THE MOTION TO SUPPRESS HEARING, WHICH PREJUDICED PETITIONER AS THE RECORDINGS WOULD HAVE IMPEACHED DETECTIVE SKOUMAL'S TESTIMONY AT THE SUPPRESSION HEARING, IN VIOLATION OF THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.**

Mr. Delacruz contends trial counsel was ineffective in failing to obtain a copy of phone calls between him and the confidential informant while the informant was in custody on an unrelated charge and interviewed by law enforcement. Mr. Delacruz

alleges that the phone calls would reveal that the informant initiated the calls, and that he never attempted to change the location where he and the informant were to meet (from a restaurant to a residence). Mr. Delacruz claims the phone calls should have been used at the suppression hearing to impeach Detective Skoumal's testimony that he made the initial call to the informant and attempted to change the place where he and the informant were to meet. Mr. Delacruz argues had counsel used the phone calls to impeach Detective Skoumal's testimony (the sole witness at the hearing), the court would have found the testimony not credible, granted the motion to suppress, and dismissed the case.

This claim was raised in state court in Ground Three of Mr. Delacruz's amended Rule 3.850 motion (Doc. 11-5, Ex. 7, Part 1 at docket pp. 356-61). In denying the claim, the state post-conviction court stated:

> Defendant argues counsel was ineffective for failing to introduce the recorded phone calls allegedly between the C.I. and the Defendant at the suppression hearing. He claims the recorded calls would have impeached Detective Skoumal's testimony that Defendant initiated contact by calling the C.I. while the C.I. was in custody, during the videotaped interview.

> However, the recordings would not have proven Defendant did not initiate the first phone call. Detective Skoumal testified that, after the initial call from Defendant, the C.I. initiated subsequent follow-up calls to Defendant at law enforcement's direction, which he recorded. The recorded calls would not show Defendant did not make the first unrecorded call, only that he did not make the subsequent calls, which was not in dispute.

> Next, Defendant contends that the calls would have refuted Detective Skoumal's testimony that Defendant changed the meet location. The State proffered its cross-examination related to the phone calls at the trial, in case Defendant chose to testify. The recorded calls would not have impeached Detective Skoumal but instead supported his testimony that Defendant updated the C.I. as to his time and location. The Court knew at the suppression hearing that the calls did not include an address or any

discussion of drugs. The recordings would not have changed the outcome
of the suppression hearing because the Court already knew the information
when it made its decision. The Court cannot deem trial counsel ineffective
for failing to pursue a meritless issue. *Teffeteller v. Dugger*, 734 So. 2d 1009,
1020 (Fla. 1999). This ground will be denied.

(Doc. 11-6, Ex. 7, Part 2 at docket pp. 137-38) (footnotes omitted). The state appellate

court affirmed without a written opinion (Doc. 11-7, Ex. 11).

The state post-conviction court's determination that counsel was not deficient in

failing to use the phone calls to impeach Detective Skoumal's testimony was

reasonable. Detective Skoumal testified that while the informant was being interviewed,

the informant received a call on his cell phone from Mr. Delacruz (Doc. 11-6, Ex. 7,

Part 2 at docket p. 146). That call was not recorded, but the subsequent calls made by

the informant to Mr. Delacruz were recorded (*Id*. at docket p. 147). Thus, the recorded

calls would not have impeached Detective Skoumal's testimony that the initial call was

made by Mr. Delacruz.

Detective Skoumal testified Mr. Delacruz changed the location where he and the

informant would meet from the restaurant to the residence of a friend of the informant's

where the informant and Mr. Delacruz made prior drug deals (*Id*. at docket p. 151).

Even if that testimony was incorrect, the existence of such a mistake does not establish

that the court would have ruled differently. Who initiated the change of location was a

relatively inconsequential detail, considering the other information the informant

provided detailing the pending drug transaction he had with Mr. Delacruz and

describing Mr. Delacruz and his vehicle. Thus, the determination that counsel was not

deficient in failing to use the recorded calls to impeach Detective Skoumal was

reasonable. *See, e.g., Campbell v. United States*, 364 F.3d 727, 735 (6th Cir.2004); *Allen v. Woodford*, 395 F.3d 979, 999 (9th Cir. 2005) (there is no ineffective assistance where defense counsel decides not to impeach a witness over inconsequential matters).

Mr. Delacruz has failed to demonstrate the state courts' denial of this claim was an unreasonable application of *Strickland* or based on an unreasonable determination of the facts. Accordingly, Ground Three warrants no relief.

**GROUND FOUR:**          **PETITIONER  WAS DENIED  EFFECTIVE ASSISTANCE  OF COUNSEL WHEN COUNSEL INTERFERED WITH THE PETITIONER'S RIGHT TO TESTIFY, WHICH PREJUDICED THE PETITIONER IN VIOLATION OF THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONVICTION [sic] *STRICKLAND V. WASHINGTON*, 104 S.CT. 2052 (1984).**

Mr. Delacruz argues that trial counsel was ineffective for advising him to not testify. He alleges counsel advised him his testimony was unnecessary because the State failed to prove that 1) he knew the substance in the packages was cocaine, and 2) that he had actual or constructive possession of the cocaine. He argues his testimony was essential to explain how the cocaine got into the trunk of his car and why his fingerprints were on the baggies containing the cocaine. He asserts he would have testified that: 1) earlier on the day of his arrest, his roommate, Arturo Oviedo, borrowed his vehicle for several hours; 2) when Mr. Oviedo returned the vehicle, Mr. Delacruz agreed to take him to a friend's house; 3) when Mr. Delacruz opened the trunk of the vehicle to put in a guitar, he saw plastic bags "that looked odd to him because he always kept his car clean;" 4) he grabbed the bags to throw them away when

Mr. Oviedo stopped him and told him "not to worry about them," and therefore he put

them back in the trunk; and 5) he never called the informant, rather the informant

called him and "arranged a meeting."

The state post-conviction court conducted an evidentiary hearing on this claim.

Trial counsel testified that he ultimately advised Mr. Delacruz to not testify because he

was concerned if Mr. Delacruz testified and denied knowing what was in the baggies he

saw and touched in the trunk of his vehicle, the door would have been opened for the

State to question him regarding the nature of his prior convictions involving trafficking

cocaine and possession of drug paraphernalia (Doc. 11-6, Ex. 7, Part 2 at docket p.

308). Counsel explained that his trial strategy was to argue the State failed to prove Mr.

Delacruz knowingly possessed the cocaine (*Id.* at docket p. 311).

In response, Mr. Delacruz testified that he would have testified at trial that after

Mr. Oviedo returned his vehicle, he put his guitar in the trunk (*Id.* at docket p. 292). He

saw the bag in which the cocaine was located then picked up and opened the bag to see

what was inside (*Id.* at docket pp. 292-94). Mr. Oviedo told him to stop, don't worry

about the bag, and just leave it in the trunk (*Id.*). He closed the bag and dropped it back

in the trunk (*Id.* at docket p. 294).

In denying the claim, the state post-conviction court stated:

Defendant alleges trial counsel interfered with the Defendant's right
to testify, and prejudiced the Defendant. He alleges that counsel misadvised
him that his testimony was not necessary because he claimed the State failed
to meet its burden. Defendant contends he did not know there were
controlled substances in his car and he needed to explain that the presence
of his fingerprints on the cocaine bags in his trunk resulted from him moving
the bags his codefendant put in his vehicle. He also alleges the CI initiated

contact and they did not discuss drugs or money on the calls. Accordingly, Defendant does not believe the content of the CI calls could harm his case and should not have deterred his counsel from allowing him to testify.

There was discussion at trial that Defendant's testimony could possibly open the door to the State eliciting information about his flight to Texas to avoid serving a potential life sentence in this case. Trial counsel explained at the evidentiary hearing that Defendant's testimony would have likely opened the door to information about the specifics of Defendant's prior drug conviction. Usually, the details of a prior conviction are not admissible to impeach, however, in some circumstances the information may be relevant and admissible. *See, e.g., Mosley v. State*, 739 So. 2d 672, 675-81 (Fla. 4th DCA 1999) (permissible for state to cross-examine defendant about specifics of prior criminal record concerning drug use and drug dealing when defendant claimed he did not use or know about cocaine). Trial counsel also explained that he did not believe the jury would be receptive to Defendant's claim of ignorance considering the other evidence against Defendant, such as his statements in the back of the police car, which could be considered odd for an innocent person. Trial counsel testified that he advised Defendant against testifying but would not have prevented Defendant from testifying if he was adamant about doing so.

"[A]n attorney is not ineffective for decisions that are a part of a trial strategy that, in hindsight, did not work out to the defendant's advantage." *Mansfield v. State*, 911 So. 2d 1160, 1174 (Fla. 2005) *citing Strickland*, 466 U.S. at 689; *see also Walls v. State*, 926 So. 2d 1156, 1165-66 (Fla. 2006) (Not ineffectiveness for defense to include portions of taped confession when it was a tactical decision intended to bolster defense theory of "burglary gone bad"); *Gamble v. State*, 877 So. 2d 706 (Fla. 2004) (Counsel not ineffective for trial strategy of conceding guilt and seeking lesser offense when there was overwhelming evidence including a confession).

Based on the totality of the circumstances, counsel's advice was a strategy based on his knowledge and experience with criminal matters. As counsel evaluated and considered the options, and advised Defendant of such, he cannot be deemed ineffective for advising Defendant against testifying in these circumstances. This ground will be denied.

(Doc. 11-6, Ex. 7, Part 2 at docket pp. 248-49) (footnote omitted). The state appellate

court affirmed without a written opinion (Doc. 11-7, Ex. 11).

Mr. Delacruz fails to show that the state post-conviction court unreasonably applied the deficient performance prong of *Strickland* because he does not show that counsel's performance fell "outside the wide range of professionally competent assistance" under the circumstances. *Strickland*, 466 U.S. at 690. Counsel had a legitimate concern that if Mr. Delacruz testified, he could "open the door" to impeachment with his prior drug convictions. *See Mosley v. State*, 739 So. 2d 672, 681 (Fla. 4th DCA 1999) (defendant's testimony he did not use drugs or deal drugs opened the door for the State to question defendant regarding his prior convictions for delivery of cocaine, possession of cocaine, possession of cocaine with intent to deliver, and tampering with evidence (cocaine)). Moreover, he believed the jury would not "have been receptive" to Mr. Delacruz's explanation about how his fingerprints got on the baggies (Doc. 11-6, Ex. 7, Part 2 at docket p. 312). Finally, counsel was concerned Mr. Delacruz would be confronted with the statements he made to Mr. Oviedo in the back of the patrol car (*Id*. at docket p. 313).[4] Rather than risk admission of the prior convictions and impeachment of Mr. Delacruz's credibility, counsel instead challenged the State's lack of evidence establishing Mr. Delacruz knowingly possessed the cocaine. Consistent with that defense, counsel argued during closing that the State failed to exclude the reasonable hypothesis that Mr. Delacruz's fingerprints got on the baggies in some way that did not show Mr. Delacruz's knowledge of the presence of cocaine,

---

[4] Mr. Delacruz's recorded conversation with co-defendant Mr. Oviedo in the back of the police cruiser was published for the jury (Doc. 11-3, Ex. 1c at docket pp. 203-15).

including touching the baggies before the cocaine was put in the baggies and in the trunk (Doc. 11-3, Ex. 1c at docket pp. 299, 302).

Under the circumstances, counsel's advice to Mr. Delacruz to not testify could "be considered sound trial strategy." *Chandler v. United States*, 218 F.3d 1305, 1314 (11th Cir. 2000) (en banc) ("Thus, counsel cannot be adjudged incompetent for performing in a particular way in a case, as long as the approach taken might be considered sound trial strategy." (quotation marks omitted)). "[S]ome reasonable lawyer at the trial could have acted, in the circumstances, as [Mr. Delacruz's] defense counsel acted at trial." *White*, 972 F.2d at 1220 ("We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial."). Consequently, defense counsel's performance was not deficient under *Strickland*. Accordingly, Mr. Delacruz has failed to demonstrate the state courts' denial of this claim was an unreasonable application of *Strickland* or based on an unreasonable determination of the facts. Ground Four therefore warrants no relief.

**GROUND FIVE:   PETITIONER WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL WHEN COUNSEL FAILED TO REQUEST A SPECIAL JURY INSTRUCTION REGARDING KNOWLEDGE, WHICH PREJUDICED  THE PETITIONER IN VIOLATION  OF THE SIXTH AND FOURTH AMENDMENTS TO THE UNITED STATES CONVICTION [sic] *STRICKLAND V. WASHINGTON*, 104 S.C.T. [sic] 2052 (1984).**

Mr. Delacruz contends counsel was ineffective in failing to request a special jury instruction on the affirmative defense of lack of knowledge of the illicit nature of the controlled substance found in his vehicle. He argues he was entitled to the instruction

because his defense was, he lacked knowledge of the illicit nature of the substance. And

he asserts had the instruction been given, there is a reasonable likelihood the outcome

of the trial would have been different.

This claim was raised in state court in Ground 6 of Mr. Delacruz's amended

Rule 3.850 motion (Doc. 11-5, Ex. 7, Part 1 at docket pp. 368-70). In denying the claim

after the evidentiary hearing, the state post-conviction court stated:

> Defendant alleges counsel should have asked for a special jury
> instruction to support Defendant's claim that he did not know what was in
> the packages he touched, and thus did not know the illicit nature of the
> controlled substance. Lack of knowledge of the illicit nature of a controlled
> substance is an affirmative defense. *See Quick v. State*, 46 So. 3d 1159, 1160
> (Fla. 4th DCA 2010). "While a defendant is entitled to have the jury
> instructed on his theory of defense, the failure to give special jury
> instructions does not constitute error where the instructions given
> adequately address the applicable legal standards." *Stephens v. State*, 787 So.
> 2d 74 7, 755 (Fla. 2001).
>
> Defendant's trial counsel acknowledged that he did not ask for the
> special instruction because he felt the standard jury instruction sufficiently
> satisfied the lack of knowledge element. The instruction advises the jury that
> knowledge may be inferred if a person has exclusive possession of a
> controlled substance, but may not be inferred if the person does not have
> exclusive possession of it. Moreover, trial counsel felt that by presenting an
> affirmative defense of lack of knowledge, it would open the door to
> questions about Defendant's prior drug arrests, as set forth in Ground 5.
> Defendant's postconviction counsel conceded at hearing that he did not
> agree with Defendant's claim and agreed with trial counsel that the special
> jury instruction was not necessary. Defendant has failed to demonstrate
> prejudice based on failure to request the special jury instruction. Counsel
> cannot be deemed ineffective for failing to pursue a meritless issue. *Teffeteller
> v. Dugger*, 734 So. 2d 1009, 1020 (Fla. 1999). This ground will be denied.

(Doc. 11-6, Ex. 7, Part 2 at docket pp. 249-50) (footnote omitted). The state appellate

court affirmed without a written opinion (Doc. 11-7, Ex. 11).

"The failure to request a jury instruction is a specific attorney error that is subject to *Strickland's* performance and prejudice components." *Jenkins v. Sec'y, Dep't of Corr.*, 520 F. App'x 871, 873 (11th Cir. 2013). However, the state post-conviction court determined counsel was not deficient, and there was no prejudice, because pursuing the special instruction would have been meritless.

In Florida, a defendant may have a special instruction only when three elements are satisfied: "(1) the special instruction was supported by the evidence; (2) the standard instruction did not cover the theory of defense; and (3) the special instruction was a correct statement of the law and not misleading or confusing." *Funchess v. State*, 126 So. 3d 1107, 1110 (Fla. 4th DCA 2012) (citation omitted). The special instruction Mr. Delacruz wanted was not supported by the evidence because the affirmative defense he lacked knowledge of the illicit nature of the substance was not presented.[5] As the state post-conviction court correctly noted, defense counsel chose to not present the affirmative defense because he was concerned it would open the door for the State to present evidence of his prior drug convictions (Doc. 11-6, Ex. 7, Part 2 at docket pp. 311-16). Instead, the defense presented was the State failed to prove Mr. Delacruz knowingly possessed the drugs because the evidence did not prove he knew there were drugs in the trunk of his vehicle (*Id.* at docket p. 310-11). The standard jury instruction

---

[5] Mr. Delacruz correctly states that during closing argument counsel stated, "Is it a possibility that my client touch [sic] it with cocaine in there, not knowing what it was? Yes, that is a possibility." (Doc. 11-3, Ex. 1c at docket p. 296). However, the statement was not evidence. *See Collins Fruit Co. v. Giglio*, 184 So. 2d 447, 449 (Fla. 2d DCA 1966)("[I]t is axiomatic that the arguments of counsel are not evidence. . . .").

covered that theory of defense (Doc. 11-3, Ex. 1c at docket pp. 313).[6] Accordingly, counsel was not deficient in failing to request the special instruction, and there was no prejudice, because the request likely would have been denied.

Mr. Delacruz has failed to demonstrate the state courts' denial of this claim was an unreasonable application of *Strickland* or based on an unreasonable determination of the facts. Ground Five therefore warrants no relief.

Any allegations not specifically addressed have been found to be without merit.

It is therefore **ORDERED** that:

1. The Petition for Writ of Habeas Corpus (Doc. 1) is **DENIED**. The Clerk must enter judgment against Mr. Delacruz and close this case.

2. An application for a Certificate of Appealability (COA) may be granted only if Mr. Delacruz makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). He cannot make this showing. Accordingly, a COA is **DENIED**. And Mr. Delacruz may not proceed on appeal *in forma pauperis*.

**DONE AND ORDERED** at Tampa, Florida, on February 21, 2023.

*/s/ William F. Jung*
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**

Copies to: Milton Delacruz, *pro se*
　　　　　Counsel of Record

---

[6] The standard instruction stated, "If a person does not have exclusive possession of a controlled substance, knowledge of its presence may not be inferred or assumed[,]" and "To prove the crime of possession of a controlled substance the State must prove the following three elements beyond a reasonable doubt. . .3. Milton Delacruz had knowledge of the presence of the substance."